UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SEIU HEALTHCARE MICHIGAN,
f/k/a SEIU LOCAL 79,                                    Case No. 08-13757

    Plaintiff,                                            Hon. Nancy G. Edmunds

v.

OUTER DRIVE PARTNERS, LLC
d/b/a HARTFORD NURSING &
REHABILITATION CENTER,

    Defendant.
_____/

**OPINION AND ORDER GRANTING PLAINTIFF'S MOTION TO CONFIRM ARBITRATION AWARD AND FOR SUMMARY JUDGMENT [14] AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [13]**

Plaintiff SEIU Healthcare Michigan, f/k/a SEIU Local 79 ("SEIU") filed this action to confirm an arbitration award, which sustained a grievance filed by member and certified nursing assistant (CNA) Blanche Gray, against her employer, Defendant Outer Drive Partners, LLC d/b/a Hartford Nursing & Rehabilitation Center ("Hartford"). Defendant Hartford asserts that enforcement of the arbitration award ordering reinstatement of Gray with back pay would be contrary to public policy. This matter comes before the Court on Plaintiff's motion to confirm the arbitration award and the parties' cross motions for summary judgment. For the reasons set forth below, Plaintiff's motion is GRANTED, and Defendant's motion is DENIED.

**I.     Facts**

Sometime between 7.45 a.m. and 8.00 a.m. on April 1, 2006, Kimberly Brown, a certified nursing assistant (CNA) at Hartford Nursing & Rehabilitation Center, found a male resident lying fully clothed in his bed, with his clothes wet with urine.  (Def.'s Ex. A, at 5.) Brown called CNA Carso Jones and Charge Nurse/LPN LySandra Walker to witness the resident's condition.  (*Id.*)  Walker reported the incident to her supervisor, B.J. Spearman. (*Id.*)

On April 12, 2006, the resident's daughter called the facility administrator, Mary Hoskins, to complain that on April 1, her father has been left clothed and wet with urine for some period of time.  (Def.'s Ex. A, at 4.)  This was the first Hoskins had heard of the incident, and she began an investigation. (Def.'s Ex. A, at 4-5.)  On April 13, 2006, pending investigation of the alleged incident,  Hoskins suspended Blanche Gray, a certified nursing assistant at Hartford, who had been assigned to care for the resident during the shift immediately prior to Brown, Jones, and Walker on April 1, 2006.  (Def.'s Ex. A, at 4-5.) Gray's response to the suspension read: "This write up/suspension is directed at me but I am the wrong per.  Will file a grievance."  (Joint Appendix ("JA") Ex. 3, at 1.)

As part of her investigation, Hoskins spoke to CNA Brown, LPN Walker, and CNA Jones.  (Def.'s Ex. A, at 5.)  Defendant alleges that Hoskins interviewed the resident and that he advised her that he had put his call light on for help because he was cold, but that when Gray arrived, she was nasty, did not give him a blanket, and never returned to his room. (Def.'s Br. at 2.)  Hoskins also self-reported the incident to the Michigan Department of Community Health (MDCH) on April 14, 2006.  (Def*.'s* Ex. A, at 5.)  On May 2, 2006, a Due Process meeting was held to allow Gray to respond to the allegation of neglect.  Gray

2

stated that she did not make rounds between the midnight and day shifts, as required, because the CNA on day shift would usually tell her if someone was soiled. (JA Ex. 2, at 3.) For this reason, Gray was not able to verify whether the resident was soiled. (*Id.*)[1]

On May 9, 2006, Gray was terminated effective April 13 for violation of Work Rule 26, prohibiting "Other conduct or neglect of duties determined by management to be detrimental to the welfare of residents, fellow employees, the work unit or the facility." (Def.'s Ex. A, at 3-4; JA Ex. 4.) The collective bargaining agreement between SEIU and Hartford prohibits discharge of employees without "just cause" and provides for final and binding arbitration of disputes. (JA Ex. 1, at Art. VI-VII.) Pursuant to this agreement, Gray filed a grievance, which was submitted to binding arbitration. (JA Ex. 2, at 2, 4.)

On June 30, 2006, pursuant to Hoskins' self-reporting of the incident, the Michigan Department of Community Health (MDCH) conducted an abbreviated survey of the facility "to determine compliance with Federal participation requirements for nursing homes participating in the Medicare and/or Medicaid programs." (Def.'s Ex. B., at 1.) On July 17, 2006, the MDCH "found that [the] facility was not in substantial compliance with the participation requirements" and cited Hartford for "fail[ing] to provide appropriate incontinent care for one of three sampled residents who needed assistance with toileting, resulting in neglect" and for "fail[ing] to promptly investigate an allegation of abuse." (Def.'s Ex. B., at 1, 6, 13-14, 18.) The MDCH also fined the facility $600. (Def.'s Mot., at 5.) Hartford did not appeal these findings. (Def.'s Ex. C.)

---

[1] The arbitrator did not discuss the May 2, 2006 Due Process meeting. Gray's statements during that meeting are summarized in a letter from Hoskins to SEIU that was admitted as an exhibit by the arbitrator. (JA, Ex. 2, at 3; Def.'s Ex. A, at 2.)

3

Arbitrator Lee Franklin held a hearing on December 7, 2006, at which he heard the testimony of witnesses and admitted several exhibits.[2] The sole issue before the Arbitrator was whether Gray had been terminated for "just cause." On February 14, 2007, Arbitrator Franklin issued an Opinion and Award, in which she determined that Gray had not been terminated for just cause. (Def.'s Ex. A.) Franklin based this determination on the fact that although "there is no doubt that the resident was found in this condition," Hartford had not met its burden of proving that Blanche Gray was the individual responsible for the neglect. (Def.'s Ex. A, at 6.)

Franklin found that "there was a time period—between the 7.00 a.m. rounds and the 8.00 a.m. discovery, during which [the resident] could have voided." (Def.'s Ex. A, at 6.) Testimony had revealed that Brown, Jones, and Walker's shifts began at 7.00 a.m., while Gray's shift ended at 7.30 a.m. (Def.'s Ex. A, at 5.) There was also testimony that residents at Hartford urinate frequently, and it is not uncommon for there to be urine-stained bedclothes and garments. (Def.'s Ex. A, at 5-6.) Hartford did not explain the time gap, produce the Complaint book, or call Supervisor Spearman. (Def.'s Ex. A, at 6.) Franklin noted that, on March 29, 2006, Gray had filed a complaint for harassment against her accusers, CNA Brown and LPN/Charge Nurse Walker. (Def.'s Ex. A, at 4.) Franklin concluded:

> The testimony revealed that an incontinent resident had voided between 7:00 a.m. and 8:00 a.m. Fixing the blame on someone who left at 7:30 a.m. did not sustain the Employer's burden of proof.

---

[2] Franklin rejected Defendant's attempt to admit the entire MDCH Complaint Survey and related documents because no one from the agency was present to testify regarding their contents. (Def.'s Br., at 4; Def.'s Ex. A, at 2.)

4

(Def.'s Ex. A, at 6.)  Franklin ordered Gray reinstated with back pay.  (Def.'s Ex. A, at 7.)

Although there has been communication between the parties, Hartford has not to date complied with the Award.  (Pl.'s Br. at 1-2; Compl., Exs. C-G.)  On September 2, 2008, Plaintiff SEIU filed a complaint in the United States District Court for the Eastern District of Michigan to confirm the Arbitration Award pursuant to Section 301 of the Labor-Management Relations Act (LMRA), 29 U.S.C. § 185(a).  The matter is now before the court on Plaintiff's motion to enforce the Award and for summary judgment and Defendant's motion for summary judgment.

## II.   Summary Judgment Standard

Summary judgment is appropriate only when there is "no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to the party's case and on which that party bears the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 323.  Once the moving party meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the non-moving party.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

The non-moving party may not rest upon its mere allegations, however, but rather must "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e). The mere existence of a scintilla of evidence in support of the non-moving party's position will not suffice. Rather, there must be evidence on which the jury could reasonably find for the non-moving party. *Hopson v. DaimlerChrysler Corp.*, 306 F.3d 427, 432 (6th Cir. 2002).

### III. Analysis

#### A. Enforcement of Arbitration Award

"It is a well-settled principle that courts play only a limited role in reviewing labor arbitration awards." *Interstate Brands Corp. v. Chauffeurs, Teamsters, Warehousemen and Helpers Local Union No. 135*, 909 F.2d 885, 888 (6th Cir. 1990); *see also DBM Techs., Inc. v. Local 227, United Food & Commercial Workers Int'l Union*, 257 F.3d 651, 656 (6th Cir. 2001) (noting that a federal court's review of an arbitration award is "'one of the narrowest standards of judicial review in all of American jurisprudence'" (internal citation omitted)). The Supreme Court has cautioned that "the federal policy of settling labor disputes by arbitration would be undermined if courts had the final say on the merits of the awards." *Steelworkers v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 596 (1960). In *United Paperworkers Int'l Union, AFL-CIO v. Misco*, 484 U.S. 29 (1987), the Supreme Court delineated the narrow bounds of this Court's review:

> Because the parties have contracted to have disputes settled by an arbitrator chosen by them rather than by a judge, it is the arbitrator's view of the facts and of the meaning of the contract that they have agreed to accept. Courts thus do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts. To resolve disputes about the application of a collective-bargaining agreement, an arbitrator must find facts and a court may not reject those findings simply because it disagrees with them. The same is true of the arbitrator's interpretation of the contract. The arbitrator may not ignore the plain

> language of the contract; but the parties having authorized the arbitrator to give meaning to the language of the agreement, a court should not reject an award on the ground that the arbitrator misread the contract. . . . [T]he arbitrator's award settling a dispute with respect to the interpretation of a labor agreement must draw its essence from the contract and cannot simply reflect the arbitrator's own notions of industrial justice. But as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision.

*Id.* at 37-38 (internal citations omitted).

Despite this deferential review, a court must "refrain from enforcing" an arbitration award "if the contract as interpreted by [the arbitrator] violates some explicit public policy." *W.R. Grace & Co. v. Local Union 759*, 461 U.S. 757, 766 (1983). This is "a specific application of the more general doctrine, rooted in the common law, that a court may refuse to enforce contracts that violate law or public policy." *Misco*, 484 U.S. at 42. "When an arbitration award is challenged on public policy grounds, the court must determine whether the arbitrator's interpretation of the contract jeopardizes a well-defined and dominant public policy, taking the facts as found by the arbitrator." *Bd. of County Comm'rs v. L. Robert Kimball and Assocs.*, 860 F.2d 683, 686 (6th Cir. 1988).

The Sixth Circuit has described the heavy burden faced by a litigant attempting to vacate an arbitration award on public policy grounds:

> [T]he public policy exception to the general deference afforded arbitration awards is very limited, and may be exercised only where several strict standards are met. First, the decision must violate some explicit public policy that is well defined and dominant. This dominant public policy is to be ascertained by reference to laws and legal precedents and not from general considerations of supposed public interests. Second, the conflict between the public policy and the arbitration award must be explicit and clearly shown. Further, it is not sufficient that the 'grievant's conduct for which he was disciplined violated some public policy or law,' rather, the relevant issue is whether the arbitrator's award 'requiring the reinstatement of the grievan[t] . . . violated some explicit public policy.' The courts have emphasized that

> this exception is limited and 'does not otherwise sanction a broad judicial power to set aside arbitration awards as against public policy.'

*Shelby County Health Care Corp. v. Am. Fed. of State, County and Mun. Employees, Local 1733*, 967 F.2d 1091, 1095 (6th Cir. 1992) (internal citations omitted).

Defendant argues that the Court should refuse to enforce the Arbitration Award as contrary to public policy. Specifically, Defendant contends that reinstating Gray would violate Michigan's Public Health Code, M.C.L. 333.20173a(1)(i), which reads in relevant part:

> (1) Except as otherwise provided in subsection (2), a health facility or agency that is a nursing home, county medical care facility, hospice, hospital that provides swing bed services, home for the aged, or home health agency shall not employ, independently contract with, or grant clinical privileges to an individual who regularly has direct access to or provides direct services to patients or residents in the health facility or agency after April 1, 2006 if the individual satisfies 1 or more of the following:
>
> * * *
>
> (i) Has been the subject of a substantiated finding of neglect, abuse, or misappropriation of property by a state or federal agency pursuant to an investigation conducted in accordance with 42 U.S.C. § 1395i-3 or 1396r.

Defendant's reliance on this statute is misplaced. While M.C.L. 333.20173a constitutes an explicit public policy, reinstating Gray would not violate it because she was not "the subject of a substantiated finding of neglect . . . by a state or federal agency pursuant to an investigation conducted in accordance with 42 U.S.C. § 1395i-3 or 1396r."

First, by the plain meaning of the word, Gray was not the "subject" of the state agency's finding of neglect. The results of the Michigan Department of Community Health (MDCH) abbreviated survey constitute a finding of 'neglect' and 'failure to investigate abuse' on the part of the facility, and not on the part of a particular staff member. (Def.'s Ex. B.) While the survey refers to Gray, it does so only in the context of describing what

8

the facility administrator told the MDCH surveyor about the incident. (Def.'s Ex. B, at 6-8, 14-16, 19, 21.) That is, the survey recounts the facility administrator's conclusions regarding Gray's culpability rather than representing MDCH's determination about the particular individual responsible for the neglect.

Second, the MDCH abbreviated complaint survey did not constitute an investigation *of Gray* "conducted in accordance with 42 U.S.C. § 1395i-3 or 1396r." 42 U.S.C. § 1395i-3 and 42 U.S.C. § 1396r provide in relevant part:

> (C) Investigation of allegations of resident neglect and abuse and misappropriation of resident property
>
> The State shall provide, through the agency responsible for surveys and certification of nursing facilities under this subsection, for a process for the receipt and timely review and investigation of allegations of neglect and abuse and misappropriation of resident property by a nurse aide of a resident in a nursing facility or by another individual used by the facility in providing services to such a resident. The State shall, after providing the individual involved with a written notice of the allegations (including a statement of the availability of a hearing for the individual to rebut the allegations) and the opportunity for a hearing on the record, make a written finding as to the accuracy of the allegations. If the State finds that a nurse aide has neglected or abused a resident or misappropriated resident property in a facility, the State shall notify the appropriate licensure authority. A State shall not make a finding that an individual has neglected a resident if the individual demonstrates that such neglect was caused by factors beyond the control of the individual.

42 U.S.C. §§ 1395i-3(g)(1)(C), 1396r(g)(1)(C). There is no indication in the record that MDCH conducted an investigation of Gray; notified her in writing of any allegations; or reported her to a licensing authority. While Defendant is correct that these statutes also describe the state's role in conducting surveys of the type done by MDCH in this case, *see* 42 U.S.C. §§ 1395i-3(g)(2), 1396r(g)(2), nursing home facilities, and not individual staff members, are the *subjects* of these surveys. As such, the Arbitration Award reinstating

9

Gray does not conflict with M.C.L. 333.20173a. *See United States v. Ron Pair Enters.*, 489 U.S. 235, 242 (1989) (noting that "[t]he plain meaning of legislation should be conclusive").

Even if the Court were to assume that M.C.L. 333.20173a generally evidences a public policy of ensuring that nursing homes provide competent care and do not employ staff who neglect residents, the Award reinstating Gray would not violate this policy. Arbitrator Franklin acknowledged that if "the Grievant was the responsible party, and proper procedures had been followed to determine these factors and to punish her, that discharge should stand." (Def.'s Ex. A, at 3.) But she ultimately found insufficient evidence that Gray committed the neglect for which she had been discharged. (Def.'s Ex. A, at 6.) "[N]othing preclude[d] [Hartford] from negotiating a CBA that gives management an exclusive, nonarbitrable right to discharge an employee it finds, in its sole discretion, to have [committed neglect]," but it did not do so. *MidMich. Reg'l Med. Center-Clare v. Prof'l Employees Div. of Local 79*, 183 F.3d 497, 506 (6th Cir. 1999). Instead, "both employer and union have granted to the arbitrator the authority to interpret the meaning of their contract's language, including such words as 'just cause.'" *E. Associated Coal Corp. v. United Mine Workers of Am.*, 531 U.S. 57, 61 (2000). As such, the parties and this Court are bound by the factual findings of the Arbitrator— in this case, the finding that Gray did not commit neglect. *See MidMich. Reg'l Med. Center-Clare*, 183 F.3d at 501, 505.

While courts have vacated on public-policy grounds arbitration awards ordering reinstatement of employees discharged for misconduct, they have done so only when an arbitrator ordered reinstatement despite finding that the employee committed the offense. *See, e.g.*, *Newsday, Inc. v. Long Island Typographical Union*, 915 F.2d 840, 843-45 (2d Cir. 1990) (vacating on public-policy grounds arbitration award reinstating employee found by

10

arbitrator to have committed sexual harassment); *Iowa Elec. Light & Power Co. v. Local Union 204*, 834 F.2d 1424, 1428-30 (8th Cir. 1987) (vacating on public-policy grounds arbitration award reinstating employee found by arbitrator to have committed violation of nuclear power plant safety rules); *Delta Air Lines, Inc. v. Air Line Pilots Ass'n, Int'l*, 861 F.2d 665, 674-75 (11th Cir. 1988) (vacating on public-policy grounds arbitration award reinstating pilot who flew while intoxicated); *Russell Mem'l Hosp. Ass'n v. United Steelworkers of Am.*, 720 F.Supp. 583, 587 (E.D. Mich. 1989) (vacating on public-policy grounds arbitration award reinstating nurse when "arbitrator explicitly found that [the nurse's] conduct was negligent and that this negligence was 'extremely serious' and 'could have detrimentally impacted the patient's health'").

Because Gray was not found to have committed neglect, Hartford has failed to establish that reinstating Gray would violate public policy against employing neglectful nursing home staff. *See, e.g.*, *MidMich. Reg'l Med. Center-Clare*, 183 F.3d at 504-06 (arbitration award reinstating nurse found to have committed isolated act of negligence did not violate Michigan's public policy of ensuring safe and competent nursing care); *Mercy Hosp., Inc. v. Mass. Nurse's Ass'n*, 429 F.3d 338, 342, 344-46 (1st Cir. 2005) (arbitration award reinstating nurse found by arbitrator not to have committed drug diversion did not violate public policy of restricting distribution of controlled substances); *Maggio v. Local 1199*, 702 F.Supp. 989, 991, 996 (E.D.N.Y. 1989) (arbitration award reinstating nurse aide found by arbitrator not to have committed abuse did not violate public policy against patient abuse); *Flushing Hosp. & Med. Ctr. v. Local 1199, Drug, Hosp. & Health Care Employees Union RWSDU/AFL-CIO*, 685 F.Supp. 55, 57 (S.D.N.Y. 1988) (arbitration award reinstating

nursing attendant found by arbitrator to have changed IV bag out of concern for patient's safety did not violate public policy against unlicensed practice of nursing). The Court finds no public policy barring enforcement of the Arbitration Award.

### B. Attorney Fees

Plaintiff SEIU also contends that it is entitled to the attorney fees it has incurred in enforcing the Arbitration Award. "Attorney's fees may be awarded in cases falling within Section 301 of the Labor Management Relations Act" only "if a party has acted in bad faith." *Aircraft Braking Sys. Corp. v. Local 856*, 97 F.3d 155, 163 (6th Cir. 1996); *see also Monroe Auto Equip. v. Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am.*, 981 F.2d 261, 269-70 (6th Cir. 1992) (noting that given that there is no fee-shifting provision in the LMRA, "[t]he only exception to the American rule that could possibly apply to [enforcement of an arbitration award] is the 'bad-faith' exception").

"The issue of when a court may vacate an arbitration award on public policy grounds" "is one that is not always subject to easy resolution." *Brigham & Women's Hosp. v. Mass. Nurse's Ass'n*, 684 F.Supp. 1120, 1125 (D. Mass. 1988). Hartford opposed enforcement of the Arbitration Award based on a good faith belief that reinstating Gray would be prohibited by M.C.L. 333.20173a(1)(i) and contrary to public policy. (Compl., Exs. C, D). Although Hartford's arguments failed to convince this Court, there is no indication that it acted in bad faith.

Plaintiff's reliance on *Local 509, Service Employees Int'l Union v. Fidelity House*, 518 F.Supp.2d 317 (D. Mass. 2007), is misplaced. The court in *Fidelity House* awarded attorney fees to the Union where the employer's "opposition to the Union's motion for

summary judgment [wa]s largely made of wholecloth." *Id.* at 326. Hartford's opposition to the Arbitration Award was not unreasonable but, rather, based on its interpretation of Michigan's Public Health Code. Moreover, it is not clear that *Fidelity House*—a district-court case in the First Circuit—is applying the Sixth Circuit's "bad faith" standard. Because Hartford's challenge to the Arbitration Award on public policy grounds was not unreasonable or brought in bad faith, the Court DENIES SEIU's request for attorney fees.

## IV. Conclusion

For the foregoing reasons, Plaintiff's motion to confirm the arbitration award and for summary judgment is GRANTED, and Defendant's motion for summary judgment is DENIED. Plaintiff's motion for attorney fees is DENIED.


s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated: June 19, 2009


I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on June 19, 2009, by electronic and/or ordinary mail.

s/Carol A. Hemeyer
Case Manager